# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. A-17-M-375 |
| | § | (D. MINN. NO. 17-107) |
| GREGORY KIMMY | § | |

## ORDER

On May 30, 2017, the Court held a hearing on the government's motion to detain the defendant pending trial. The motion was based almost entirely on the assertion that the defendant poses a risk of flight if released. After considering the evidence presented and the arguments of counsel, the Court concluded that the defendant had rebutted the statutory presumption of detention, and that the government had failed to prove by a preponderance of the evidence that there are no conditions the Court could set that would reasonably assure the defendant's appearance as required. Accordingly, the Court denied the motion to detain and set conditions of release. The government has indicated its intention to seek review of this decision, and the undersigned issues this order so that the district judge will have a clear record of the Court's reasons for this decision.

The hearing lasted two hours. The Court heard the testimony of two witnesses – Task Force Officer Garrett Huling , called by the government, and Cynthia Sawtelle, called by the defendant. The Court also took notice of the contents of the Pretrial Services Report, and accepted the proffer of information about the defendant contained in three letters sent by friends and family members. Based on this evidence, the Court makes the following findings:

1. The government presented very little evidence to connect the defendant to the larger conspiracy charged in the indictment, and the government's witness conceded that he was not aware of evidence that the defendant had ever communicated with the lead members of the conspiracy, nor

did he have any evidence that the defendant had ever traveled to Minneapolis. The defendant's counsel proffered that the defendant had never met any of the other defendants named in the indictment, other than his wife, and the government offered no evidence to rebut this.

2. Based on the evidence presented by the government, the extent of the defendant's involvement in the alleged conspiracy is that, along with his wife, he is the lessor on an apartment used for prostitution, and was seen by surveillance visiting the apartment. The testifying agent stated that the phone number associated with the cell phone the defendant had when encountered in December 2016, had sent and received texts related to setting up "dates" for prostitutes. The government's witness, however, did not present evidence as to when those texts were sent, nor did he know when the defendant was alleged to have first begun to have involvement with the alleged conspiracy. Further, the testifying agent stated that the government seized the phone associated with the texts from the defendant in December 2016, and had not conducted any forensic search of that phone. It was thus unclear to the Court whether the texts referred to in the testimony took place before the December 2016 incident, or had continued (on a different phone) after that time.

3. Though the government seized a .45 caliber pistol from the defendant, it was seized from his home, and, because the defendant has no criminal history or other disqualifying characteristics, his possession of the pistol was lawful. The government presented no evidence whatsoever that the defendant's possession of the firearm had any relationship to the prostitution house, was possessed there, or was otherwise related to the crimes alleged in the indictment.

4. The lack of evidence concerning the strength of the government's case against the defendant was exacerbated by testimony from the government's witness that, although the lead case agent in this case was present in Austin, Texas at the time of the hearing, she chose not to attend the hearing,

nor to be present in the courthouse. The witness called by the government played a very limited role in the investigation, and was focused primarily on conducting surveillance and attempting to arrest a fugitive. He had little knowledge of the facts supporting the government's case. The Court is thus left to wonder why the case agent did not testify to support the government's claim that its case was strong. Regardless of the reasons, the case agent's failure to offer any detail specific to this defendant, and the general lack of specific evidence, left the Court unable to conclude that the government's case against this defendant is strong. The Court simply cannot tell, and the burden to prove this is the government's.

5. Though the government also emphasized that the indictment contained serious charges, it failed to offer evidence connecting the defendant to those serious charges. For example, it offered no evidence that he engaged in any violent or coercive behavior, visa fraud, or had control of large sums of money. Thus, though there are serious charges contained in the indictment, there are 21 defendants named in that document, and the government did little to tie the defendant to those more serious allegations. The Court cannot merely rely on allegations in an indictment to conclude the government's case is strong, nor can it conclude that the charges against a defendant are serious simply because a lengthy indictment that names 21 defendants contains serious charges. The government bears the ultimate burden of proof on its motion, and it cannot meet that burden regarding the nature of its case merely by pointing to the indictment, but instead must offer evidence specific to this defendant. The government did not do that in this case.

6. The government's claim that the defendant "fled" when he was encountered in December 2016 was not borne out by the testimony. The Court concludes that while the defendant was slow to stop when encountered, this could have been impacted by the evidence reflecting that there was

3

not a marked police unit on site, the agents seeking to have him stop were on foot and in plain clothes, and he was already driving away when they sought to stop him. While he did not stop immediately, he did stop before exiting the parking lot. The agent who testified at the hearing was present at the time of the stop, has experience as a state law enforcement officer, testified that he is aware that evading arrest or detention is a crime under the Texas Penal Code, and conceded he did not make any efforts to charge the defendant with that offense. In short, it is not a fair characterization of the event to state that the defendant attempted to flee when encountered in December 2016.

7. As a result of that encounter with investigating officers on this case, the defendant has been aware since December 2016 that he was a potential suspect in this case. Shortly after the encounter he retained counsel. He has made no efforts to leave Austin, much less the country, despite his knowledge of this investigation the past six months.

8. The defendant is a lifelong resident of Texas, and has resided in the greater Austin area almost his entire life. His mother, brother, wife and four children reside in Austin. He owns a house and a rental property in the Austin area, and is employed in Austin. His family and friends were present at the hearing. His mother testified to provide most of the information about the defendant.

9. The defendant has no criminal history; indeed, he has never previously been arrested.

10. The defendant has traveled to Thailand once, in 2014. He did so with his wife to visit her 17 year old son, who suffers from leukemia. The government's witness testified that it had no evidence that he was in any way involved in recruiting victims in Thailand, or that he otherwise in engaged in any acts related to this case while there. Though the government's witness was uncertain

4

about it, the defendant proffered through counsel that the he believed his passport was seized by the government.

11.   The government's witness conceded that the defendant has been married to his wife for five years, she is a lawful permanent resident of the U.S., and that their marriage is a "legitimate" marriage.

12.   The defendant has liquid assets that total less than $100,000. The rest of his assets are illiquid, as they are mostly made up of real estate with liens, and automobiles. His wife does, however, own a residence in Thailand.

13.   The defendant's mother and brother co-signed an appearance bond in the amount of $150,000, and the defendant is aware, as are his mother and brother, that if he fails to appear as required, they will be responsible to the U.S. government for that sum. The defendant's mother owns her home, and stands to lose significantly if the defendant fails to appear.

14.   The government offered no evidence to support a conclusion that the defendant would present a danger to anyone if released, and, by this lack of evidence, effectively abandoned that argument. Even if it had not done so, the evidentiary standard the government must meet to support detention on the basis of community safety is clear and convincing evidence. The government offered no evidence on this point, so it failed to carry its burden.

Based on the above findings, and consistent with the directives of the Bail Reform Act, the Court concludes that there are conditions it can set that would reasonably assure the defendant's appearance as required and the safety of the community. Consistent with this finding, the Court entered its Order Setting Conditions of Release on May 30, 2017.

SIGNED this 31st day of May, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE